Ormond MOORE, Appellant,

v.

The STATE of Texas, Appellee.

No. 36914.

Court of Criminal Appeals of Texas.

May 27, 1964.

Rehearing Denied June 27, 1964.

Glenn Polk, Dallas, for appellant.

Henry Wade, Dist. Atty., Stephen W. Guittard, Edwin L. Davis, W. John Allison, Jr., and C. M. Turlington, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is for murder; the punishment, death.

On the night in question, the deceased and one James Hill were riding together in the city of Dallas in a 1956 Ford automobile. The deceased was driving the automobile. Around 1:30 a. m., as the deceased's automobile was stopped for a stop sign at the intersection of Spring and Second Avenue, a 1961 Pontiac automobile, with five male occupants and being driven by appellant, bumped into it from the rear. The deceased got out of his automobile, walked back to the Pontiac, and had some words with the appellant. After talking to appellant, the deceased returned to his automobile and drove away with his companion to a cafe. Later, around 2 a. m., as the deceased and his companion had started home and were stopped at a stop sign at Oakland and Mc-Dermott Street, the Pontiac automobile driven by appellant again bumped into the rear of deceased's automobile. Thereupon, the deceased got out of his automobile and, when he had taken two steps, some shots were fired from the driver's side of the Pontiac automobile. The deceased fell, mortally wounded, to the ground, with a gunshot wound in the right chest. His companion, Hill, then alighted from the automobile and he, too, was shot, in the right shoulder.

It was shown by the evidence that the fatal shot which struck the deceased was fired by the appellant and that the shot which struck James Hill was fired by one of appellant's companions, James Stevens.

In presenting its case in chief, the state was permitted to show by the witness James Louis Ellis, one of the occupants in the automobile driven by appellant, that, prior to the first meeting of appellant and the deceased on the night in question, the appellant and his companions had a difficulty in the vicinity of Fair Park with some other parties who were riding in a 1962 Chevrolet Impala automobile.

Over appellant's objection that such constituted proof of an extraneous offense, the witness Ellis testified that before appellant and his companions drove up behind the

deceased's automobile the first time, they had driven alongside an Impala automobile in which some men and women were riding. At such time, appellant said to the occupants of the Impala: "Let me have those women * * * You punks, let us have those women." A man in the Impala drew a gun, pointed it in the air, and said: "Who's a punk * * * Who are you calling punks?" Appellant then fired two shots at the Impala, whereupon the Impala was driven away, and was followed by appellant and his companions. During the chase, appellant gave the gun to James Stevens, who was riding on the back seat. While being pursued, the Impala stopped and the occupants got out and started running. James Stevens then proceeded to shoot at those fleeing from the Impala with the gun which appellant had given him. After shooting at them appellant and his companions drove away to get some more shells and shortly thereafter bumped into the deceased's automobile the first time.

The witness's testimony relative to appellant and his companions shooting at the occupants of the Impala automobile clearly constituted proof of an extraneous offense.

When offered at the trial, the state insisted that the testimony was admissible under Art. 1257a, Vernon's Ann.P.C., to show the condition of appellant's mind at the time he shot the deceased. In brief and oral argument before this court, it is the state's contention that the shooting of the occupants of the Impala and of the deceased was all one continuous transaction and the testimony was therefore admissible as part of the res gestae.

■ We are unable to agree that the proof of appellant shooting into the Impala automobile was admissible under Art. 1257a, supra, to show the condition of his mind at the time he shot the deceased. Art. 1257a, supra, which provides:

"In all prosecutions for felonious homicide the State or the defendant shall be permitted to offer testimony as

to all relevant facts and circumstances surrounding the killing and the previous relationship existing between *the accused and the deceased,* together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed, * * *" (Emphasis, supplied.)

docs not extend the rules of evidence touching the admissibility of facts bearing upon the accused's state of mind. Howard v. State, 122 Tex.Cr.R. 371, 55 S.W.2d 1048. The shooting into the Impala at a different place and time was a separate and distinct act from the shooting of the deceased. Proof of such act could show neither ill-will nor malice toward the deceased, who was a stranger to appellant. Such facts distinguish this case from Chavira v. State, 167 Tex.Cr.R. 197, 319 S.W.2d 115, where the acts of the accused were a part of the same transaction and held to be admissible on the issue of both intent and identity of the accused in the shooting of the deceased. Nor do we agree that the shooting into the Impala and the killing of the deceased was one continuous act. To the contrary, it appears that there was no connection between the two acts, but that they were separate and distinct acts. The shooting into the Impala not being a part of the res gestae of the killing of the deceased, the court fell into error in permitting the state to make such proof. McRae v. State, 101 Tex.Cr.R. 411, 275 S.W. 1067; Chester v. State, 108 Tex.Cr.R. 150, 300 S.W. 57; Glover v. State, 125 Tex.Cr.R. 605, 69 S.W.2d 136; Lawrence v. State, 128 Tex. Cr.R. 416, 82 S.W.2d 647; Maddox v. State, 134 Tex.Cr.R. 289, 115 S.W.2d 644; Mounts v. State, 148 Tex.Cr.R. 177, 185 S.W.2d 731. Appellant was entitled to be tried not as a criminal, generally, but upon the charge against him. It cannot be said that the proof of the extraneous offense was not prejudicial to appellant.

Formal Bill of Exception No. Nine, as presented to the trial judge by appellant, certifies that in his closing argument to the jury the assistant district attorney stated:

" 'But this murderer, who sits over here, *Hidden by his counsel* from the scrutiny of the jury, *Hidden by his counsel.*' "

" 'Mr. Polk, if I had a client that was as guilty as your client is, a murderer as cold blooded, I would *hide* him too.' "

" 'You've seen him *hide* behind his counsel as he came into this courtroom.' "

" 'It was a killing for kicks, if you please, and that was all.' "

" *'The killing was just for kicks, joy killing.'* "

It is further certified in the bill that:

"All of which prejudicial and highly inflammatory arguments of the State's Attorney, Eddie Davis, was outside of the record, not in response to anything the Defendant had said or done, and was continuously repeated while Defendant's objections were being sustained by the Court, and the record will reflect that the foregoing prejudicial argument as well as numerous other personal vilifications and abuse of Defendant's counsel with which the record is replete, shows peradventure of a doubt that the Defendant suffered irreparable damage and injury which could not be lessened or mitigated by the Court's rulings."

In signing the bill, the trial judge certifies that the following action was taken thereon:

"The foregoing Bill of Exceptions was presented to me in due time and was approved and ordered filed, subject to the following qualifications:

"The Court does not certify to the truthfulness of the contents therein but

he does certify that they are only contentions of the Defendant.

"/s/ Joe B. Brown
"Judge"

Under the provisions of Art. 760d, Vernon's Ann.C.C.P., it is the duty of the trial judge to act upon the bills of exception, filed by a defendant, within one hundred days after notice of appeal is given. His action shall consist of either approving the bills or refusing the same with the court's reasons noted thereon.

 In the instant case the court, in effect, certified that he approved the bill but did not approve it. The court's action was tantamount to no action at all. Under the decisions of this court, where no action is taken by the trial judge on a bill of exception within the time prescribed it must be considered approved by the court. Pennington v. State, 171 Tex.Cr.R. 130, 345 S.W.2d 527, 85 A.L.R.2d 1130; Damaris v. State, Tex.Cr.App., 363 S.W.2d 464. Treating the bill as approved, it certifies argument which was improper and obviously prejudicial to appellant.

For the errors pointed out, the judgment is reversed and the cause is remanded.

Opinion approved by the court.

WOODLEY, Presiding Judge (dissenting).

This conviction is set aside, in part at least, upon the erroneous conclusion that the trial court has certified as a fact that the remarks of the assistant district attorney, Eddie Davis, set out in the majority opinion and in Formal Bill of Exception No. 9, were prejudicial and highly inflammatory; were outside the record and that such argument "as well as numerous other personal vilifications and abuse of defendant's counsel with which the record is replete, shows peradventure of a doubt that the defendant suffered irreparable damage and injury which could not be lessened or mitigated by the Court's rulings."

It should be apparent that had the trial judge entertained such view of the argument he should and no doubt would have declared a mistrial or granted a new trial.

It should also be apparent from the trial judge's certificate quoted in the majority opinion that he refused to certify that such were facts and certified that such were only contentions of the defendant.

The majority opinion is in error in concluding that the trial judge's approval of the bill with qualifications was tantamount to no action at all, and is also in error in assuming that Art. 760d V.A.C.C.P. has been or may be construed as authorizing or requiring that Bill of Exception No. 9 be treated as approved without qualification.

Bill No. 9 was presented to the trial judge and approved with qualifications in a manner authorized by Art. 667 V.A.C.C.P. and the applicable Rules of Civil Procedure. It was filed with the clerk as so qualified and there was no exception to the qualification.

The only portion of Art. 760d V.A.C.C.P. which has any bearing on a bill of exception presented to and approved by the trial judge with qualifications to which there was no exception, is the last paragraph which reads:

"Nothing in this Act shall prevent the defendant and the trial judge from agreeing upon or to the correctness of the bill of exception and the filing thereof in the trial court within ninety days from the date notice of appeal was given. Such a bill of exception shall be considered as approved by the trial judge."

Bill of Exception No. 9 may not be treated as approved without qualification, but must be considered as qualified by the trial judge under the following authorities:

The trial court's qualification of a bill of exception becomes a part of it. Townsley v. State, 103 Tex.Cr.R. 508, 281 S.W. 1054.

The appellate court will presume qualifications in duly certified bill of exception were made with the consent of the defendant or his counsel unless the contrary appears over the certificate of the trial judge. Ray v. State, 116 Tex.Cr.R. 575, 28 S.W.2d 1084; Blackshear v. State, 137 Tex.Cr.R. 264, 128 S.W.2d 1205.

To warrant appellate court in rejecting matters contained in qualifications to bill of exception there must have been an exception taken thereto, Jenkins v. State, 118 Tex.Cr.R. 556, 40 S.W.2d 109.

When bill of exception is accepted with qualifications thereto, without objection, appellant impliedly admits truthfulness of such qualifications. Court of Criminal Appeals is bound by qualifications to bill of exception which have not been objected to. Chandler v. State, 103 Tex.Cr.R. 311, 280 S.W. 817.

When the defendant accepts and files a qualified bill, he is bound by the qualification which will not only be accepted by the appellate court as correct but will also control insofar as it is in conflict with the bill prepared by the defendant. Clarich v. State, 137 Tex.Cr.R. 282, 129 S.W.2d 291.

The appellate court will not entertain a motion to strike from a bill qualifications and explanations. 5 Tex.Jur.2d 298, Sec. 181; Blain v. State, 34 Tex.Cr.R. 448, 31 S.W. 368; Pool v. State, 48 Tex.Cr.R. 478, 88 S.W. 350.

The court may qualify a bill by stating that he does not certify the truthfulness or correctness of the grounds of exception set out therein. Briscoe v. State, 37 Tex.Cr.R. 464, 36 S.W. 281.

Belcher v. State, 96 Tex.Cr.R. 561, 258 S.W. 815, where the judge endorsed on the bill: "The court does not certify that the above proceedings were had, nor does the court certify that any of the matters alleged therein are true, nor that there was any basis for supposing them to be true." The bill was considered as so qualified over the defendant's insistance that a trial judge cannot approve a bill in such manner as to destroy it.

I respectfully dissent.

## ON STATE'S MOTION FOR REHEARING

MORRISON, Judge.

We remain convinced that this case must be reversed because of the admission of the evidence relating to the extraneous Impala incident.

The majority has reconsidered Bill of Exception No. 9 and has concluded that while it certifies reversible error, in fact no error is shown because the record contains the jury argument, and it shows that timely objection was not made. We refuse to be bound by the Court's certification of error in the formal bill of exception where the record reflects the contrary. Free v. State, 165 Tex.Cr.R. 374, 307 S.W. 2d 808; Tonnan v. State, 171 Tex.Cr.R. 570, 352 S.W.2d 272. The majority remains convinced that the Court's certificate in the bill constituted no action at all. He merely stated, "The court does not certify to the truthfulness of the contents therein, but he does certify that they are only the contention of the Defendant."

The State's motion for rehearing is overruled.

WOODLEY, Presiding Judge (dissenting).

The opinion on rehearing errs in again disregarding the fact shown by the record that Bill of Exception No. 9 was not filed with the clerk as authorized by Art. 760d V.A.C.C.P., but was presented to the trial judge who qualified it and it was then filed with the clerk with the court's qualification as a part of it.

The majority now base the reversal solely upon the admission of evidence of an extraneous offense. They now conclude that

there was no reversible error in the argument, but they repeat the erroneous holding announced in the opinion to which I originally dissented—that the trial court's qualification to Bill of Exception No. 9 "was tantamount to no action at all," and the bill certifies reversible error.

The basis for holding that the certification of error in Bill No. 9 is not binding on this Court is that the informal bill in the statement of facts reflects the absence of a timely objection.

If the majority is correct and bills of exception certifying error are to be considered as approved by the trial judge despite his notation thereon that the contents of the bill "are only contentions of the defendant," Bill of Exception No. 9 certifies reversible error.

I respectfully dissent (1) to the failure of the majority to recognize and treat the bill of exception as qualified by the trial judge before it was filed; (2) to the holding that the trial judge's qualification of Bill of Exception No. 9 "was tantamount to no action at all," and (3) to the holding that in the absence of timely objection shown elsewhere in the record reversible error is not shown by "highly prejudicial and inflammatory statements to the jury, which were outside of the record, not provoked or in response to any argument of Defendant's counsel and which amounted to vilification and abuse not only of the Defendant but his Attorney as well when he time and again abused Defendant and his Attorney, * * * All of which prejudicial and highly inflammatory arguments of the State's Attorney, Eddie Davis, was outside of the record, not in response to anything the Defendant had said or done, and was continuously repeated while Defendant's objections were being sustained by the Court."

The bill of exception without the qualification of the trial court certifies that such an argument was made. It further certifies " * * * that the foregoing prejudicial argument as well as numerous other personal vilifications and abuse of Defendant's counsel with which the record is replete, shows peradventure of a doubt that the Defendant suffered irreparable damage and injury which could not be lessened or mitigated by the Court's rulings." The absence of a timely objection does not show this certification to be erroneous.